IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAKKA SHANEAK JAMES,<br><br>Plaintiff,<br><br>V.<br><br>ACURA FINANCIAL SERVICES, ET AL.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 3:25-cv-3371-N-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

*Pro se* plaintiff Shakka Shaneak James filed this action in a Dallas County, Texas state court "seek[ing] redress for damages caused by multiple creditors who [James alleges] have failed to properly verify alleged debts, engaged in fraudulent or misleading contractual practices, and misrepresented the amount or validity of debts." *E.g.*, Dkt. No. 1-9 at 2 (operative compl. at time of removal).

Citing that James alleges violations of the Fair Credit Reporting Act ("FCRA"), a federal statute, Defendant Navy Federal Credit Union removed under the Court's federal-question subject-matter jurisdiction on December 8, 2025. *See* Dkt. No. 1; 28 U.S.C. § 1331.

Senior United States District Judge David C. Godbey referred the removed action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

After reviewing the state court record attached to the notice of removal and the many filings already made in this case after removal, the Court entered a

memorandum opinion and order on December 16, 2025 to set out the applicable judicial screening standards, to allow James leave to file a third amended complaint, and to enjoin further filings in this case until the Court could complete its screening of the operative amended pleading. *See James v. Acura Fin. Servs.*, No. 3:25-cv-3371-N-BN, 2025 WL 3650751 (N.D. Tex. Dec. 16, 2025) [Dkt. No. 43] (the "MOO").

James timely filed a third amended complaint on December 26, 2025 [Dkt. No. 44-1] (the "TAC"). Although the TAC was attached to a motion for leave, granting leave was not necessary as the MOO authorized James's filing of that pleading. *See* Dkt. No. 45.

James's filing the TAC moots all prior motions in this case but James's motion requesting court-appointed counsel [Dkt. Nos. 9, 16, 18, 19, 20, 22, 23, 27, 29, & 32]. *See, e.g.*, *Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017) (per curiam) ("Once filed, that amended complaint rendered all earlier motions, including [a] motion for partial summary judgment, moot." (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam))).

The Court set out the pleading standards applicable to the TAC in its MOO, to assist James's preparation of that filing. *See James*, 2025 WL 3650751, at *2-*3.

But the undersigned will repeat those standards bellow and apply them to James's claims under the FCRA [Count 1] and the Fair Debt Collection Practices Act ("FDCPA") [Count 2] as alleged in the TAC.

And, after reviewing the TAC, the undersigned recommends that the Court also deny James's remaining motions [Dkt. Nos. 13 & 59] and dismiss this lawsuit for

the reasons and to the extent set out below.

**Legal Standards**

While Navy Federal paid the filing fee when it removed this lawsuit to federal court, James obtained leave to proceed *in forma pauperis* ("IFP") in state court. *See* Dkt. No. 1-8.

This obligates the Court to "screen [James's] claims under the IFP statute, 28 U.S.C. § 1915(e)(2)(B)." *Oyekwe v. Research Now Grp., Inc.*, 542 F. Supp. 3d 496, 504 (N.D. Tex. 2021) (citing *Phillips v. City of Dall.*, No. 3:14-cv-3131-M, 2015 WL 233336, at *4 (N.D. Tex. Jan. 14, 2015) ("As this Court, among others, has recognized, Section 1915(e)(2)(B) applies to complaints, like Plaintiff's, 'that were originally filed IFP in state court and removed to federal court.'" (quoting *Tsuchiya v. Texas*, No. 4:14-cv-64-O, 2014 WL 1329127, at *1 (N.D. Tex. Mar. 5, 2014), *rec. adopted*, No. 4:14-cv-64-O, Dkt. No. 21 (N.D. Tex. Apr. 1, 2014); citation omitted)), *appeal dismissed*, 644 F. App'x 368 (5th Cir. 2016) (per curiam)).

The IFP statute requires that the Court "dismiss the case at any time" if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

Under this standard, a *pro se* complaint need not contain detailed factual allegations – just "enough facts to state a claim to relief that is plausible on its face" – and a plaintiff must plead those facts with enough specificity "to raise a right to

relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

So a court's "obligation [is] to accept [the] complaint's factual allegations as true and assess whether those facts permit a reasonable inference that [a defendant] is liable." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020); *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and

conclusions.

So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Summed up, "to survive" dismissal under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

## Analysis

### I. James has not alleged a plausible claim under the FCRA.

"Concerned by 'abuses in the credit reporting industry,' Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while

meeting the needs of commerce." *Hammer v. Equifax Info. Sevs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (quoting *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989); citing 15 U.S.C. § 1681(b)); *see also Donna v. Countrywide Mortg.*, No. 14-cv-03515-CBS, 2015 WL 9456325, at *5 (D. Colo. Dec. 28, 2015) ("The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."' (quoting Section 1681(b))).

"The FCRA 'places distinct obligations on three types of entities: (1) consumer reporting agencies [or "CRAs"]; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies."' *Donna*, 2015 WL 9456325, at *5 (quoting *Aklagi v. Nationscredit Fin.*, 196 F. Supp. 1186, 1192 (D. Kan. 2002)).

Consistent with this structure, it appears that James has sued Experian as a CRA and the remaining defendants as furnishers where James alleges that,

> [f]rom June 2025 to the present, Plaintiff submitted multiple disputes to Experian Information Solutions, Inc. ("Experian") regarding inaccurate tradelines reported by furnishers, including but not limited to Acura Financial Services, Nissan Motor Acceptance Company, Bridgecrest Acceptance Company LLC, HS Financial Group LLC, Mohela, Kafene Inc., T-Mobile USA Inc., Optio Solutions LLC, Credence Resource Management, Harris & Harris LTD, I.C. Systems, Continental Services Group LLC, Credit Control LLC, Resurgent Capital Services LP, and Bounce AI Inc.
>
> Upon receipt of these disputes, Experian transmitted notice to the furnishers pursuant to 15 U.S.C. § 1681i(a)(2). Each furnisher was therefore under a duty to conduct a reasonable investigation of the disputed information and to correct or delete inaccurate information pursuant to 15 U.S.C. § 1681s-2(b).
>
> Despite notice, each furnisher failed to conduct a reasonable investigation of Plaintiff's disputes. Several furnishers continued

> reporting inaccurate, incomplete, or misleading information to Experian and other consumer reporting agencies.
>
> Experian failed to conduct reasonable investigations, failed to validate or delete inaccurate tradelines, and never provided Plaintiff with the results of any investigations, despite being provided proof that the debts were invalid.
>
> As a result of these failures, Plaintiff's credit reports continued to reflect false, misleading, and incomplete information, causing financial harm, reputational harm, emotional distress, and denial or delay of credit applications.

Dkt. No. 44-1 at 8.

James also offers further background as to dealings with the alleged furnisher-defendants. *See id.* at 4-7 (concluding that these "actions and omissions of Experian and the furnishers violate the [FCRA], including the duty to ensure information is complete and accurate, to investigate disputes, and to correct or delete unverified information").

But James does not offer factual content that could raise a reasonable inference that any defendant violated the FCRA.

As to Experian first, the gist of James's allegations is that "Experian failed to conduct reasonable investigations, failed to validate or delete inaccurate tradelines, and never provided Plaintiff with the results of any investigations, despite being provided proof that the debts were invalid." Dkt. No. 44-1 at 8; *accord id.* at 7 ("Experian has failed to remove invalid items from consumer report despite receiving proof of the furnishers failure to validate. Despite written request to be provided with the results of the investigation of all disputes. Plaintiff never received the results of any disputes submitted to Experian., and furnisher failed to correct and validate debts on consumer report.").

"[A] credit reporting agency, when preparing a credit report on a consumer, is required to 'follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.'" *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (quoting 15 U.S.C. § 1681e(b)), *superseded by statute on other grounds as recognized in Santos v. Healthcare Revenue Recovery Grp., LLC*, 90 F.4th 1144, 1156 (11th Cir. 2024).

And, so, the FCRA "does not impose strict liability for inaccurate entries. Rather, the plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998) (citing *Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir. 1982)).

And, "if a consumer disputes the completeness or accuracy of any information contained in her file and she notifies the credit reporting agency of the dispute, the agency must 'conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.'" *Middlebrooks v. Equifax, Inc.*, No. 23-11086, 2024 WL 631000, at *6 (11th Cir. Feb. 15, 2024) (per curiam) (quoting 15 U.S.C. § 1681i(a)(1)(A)).

And, ultimately, "the consumer must present evidence tending to show that the agency prepared a report containing inaccurate information." *Id.* (citing *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021)).

So, at the pleadings stage, a plaintiff must provide facts from which the Court may infer that "such inaccuracies resulted from a failure to maintain reasonable

procedures or conduct a reasonable investigation." *Holloway v. Equifax*, No. 4:23-cv-1038-P, 2024 WL 1741814, at *2 (N.D. Tex. Mar. 25, 2024), *rec. accepted*, 2024 WL 2747734 (N.D. Tex. May 29, 2024); *see also, e.g.*, *Bryant v. Wells Fargo Bank, N.A.*, No. 1:13-cv-02210-CC-RGV, 2013 WL 12382798, at *6 (N.D. Ga. Dec. 31, 2013) ("Courts have made clear that 'failure to follow reasonable procedures is a material element necessary for recovery under § 1681e(b). For that reason, the plaintiff must plead factual material addressed to this element.'" (quoting *Allmond v. Bank of Am.*, No. 3:07-cv-186-J-33JRK, 2008 WL 2445652, at *2 (M.D. Fla. June 16, 2008); footnote omitted)), *rec. adopted*, 2014 WL 12860071 (N.D. Ga. Jan. 27, 2014); *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 842-43 (N.D. Ill. 2005) ("Benson claims that Trans Union violated its duties under Section 1681i(a) when it continued to report the CBC Account after he notified Trans Union that it was not his. While it must be assumed for purposes of this motion that Trans Union's inclusion of the CBC Account on his credit report was inaccurate, Benson has failed to show that such inaccuracy stemmed from Trans Union's failure to perform a reasonable reinvestigation of his dispute." (footnote omitted)); *Grayson v. Equifax Credit Info. Servs.*, 18-CV-6977 (MKB), 2021 WL 2010398, at *8 (E.D.N.Y. Jan. 29, 2021) ("[E]ven assuming that the information Defendant is reporting is inaccurate because it is the result of identity theft, Plaintiff has not plausibly alleged that Defendant failed to follow reasonable procedures to ensure the accuracy of the information.").

And, because James fails to plead facts that go to the reasonableness (or any lack thereof) of the procedures that Experian followed, James has not alleged a

plausible claim to relief against Experian under the FCRA.

James's allegations against the furnisher-defendants suffer a similar defect to the extent that all James has alleged is that inaccurate information continued to appear on credit reports.

> Once a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the disputed item, correct any inaccuracy, and notify the agency of the results of its investigation. 15 U.S.C.A. § 1681s-2(b). To recover against a furnisher for violations of § 1681s-2(b), a plaintiff must show that: (1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation.

*Shaunfield v. Experian Info. Solutions, Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014) (cleaned up).

James's allegations as to each furnisher fail to provide the factual content required to support every element of a claim under Section 1681s-2(b).

For example, James alleges that "T-Mobile USA Inc acting through [its] subterfuges Harris & Harris LTD, Credence Resource Management, and I.C. Systems cycled the debt to avoid validation. Upon providing proof to Experian, Experian failed to remove item from consumer report." Dkt. No. 44-1 at 6.

In sum, as to defendants other than Experian, no facts support a reasonable inference that Experian notified each defendant of James's dispute nor that any furnisher than failed to investigate, to correct inaccuracies, or to notify Experian of the results of any investigation. *See, e.g.*, *id.*, ¶¶ 26-29, 30, & 37 (James's allegations against Bridgecrest, Nissan Motor, and Mohela all share this defect).

## II. James has not alleged a plausible claim under the FDCPA.

"The FDCPA was enacted in part 'to eliminate abusive debt collection practices by collectors.'" *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) (quoting 15 U.S.C. § 1692(e)).

> For purposes of the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." [15 U.S.C.] § 1692a(6). There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (per curiam).

*Bent v. Mackie Wolfe Zientz & Mann, P.C.*, No. 3:13-cv-2038-D, 2013 WL 4551614, at *3 (N.D. Tex. Aug. 28, 2013).

> [And d]ebt collectors are required, within five days of the initial communication regarding a debt, to provide consumers with a written notice that contains this information: (1) "the amount of the debt"; (2) "the name of the creditor to whom the debt is owed"; (3) a statement that unless the consumer "disputes the validity of the debt" within 30 days, the debt collector will assume the debt is valid; (4) a statement that if the consumer notifies the collector that the consumer is disputing the debt in writing within the 30 day period, "the debt collector will obtain verification of the debt [from the creditor] ... and a copy of [the] verification ... will be mailed to the consumer"; and (5) "a statement that, upon the consumer's written request," the debt collector will give the consumer "the name and address of the original creditor, if different from the current creditor."

*McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) (quoting 15 U.S.C. § 1692g(a)).

So, to plausibly allege any violation of the FDCPA, a complaint must include

facts to show, or from which the Court may infer, that a defendant is a debt collector.

But all James has alleged as to this requirement is

> Defendants who acted as third-party debt collectors, including but not limited to Optio Solutions LLC, Credence Resource Management, Harris & Harris LTD, I.C. Systems, Continental Services Group LLC, Credit Control LLC, Resurgent Capital Services LP, and Bounce AI Inc., engaged in debt collection activities related to the tradelines reported to Experian.

Dkt. No. 44-1 at 9.

And, even at the pleadings stage, the Court need not accept a mere allegation that a particular defendant is a statutory debt collector. *See Bent*, 2013 WL 4551614, at *3 ("Plaintiffs' assertion that Defendant undertook the role of 'debt collector' is a legal conclusion that courts are not bound to accept as true." (citing *Iqbal*, 556 U.S. at 678)).

So insufficient facts in the complaint to plausibly allege that [any of these entities] undertook the role of "debt collector" "is fatal to [James's] FDCPA claims." *Id.* (citations omitted); *see also Rushing v. Exeter Fin. LLC*, No. 3:22-cv-1704-G-BT, 2022 WL 17083660, at *3 (N.D. Tex. Oct. 26, 2022) ("Rushing does not allege facts to plausibly plead that Exeter is a debt collector, as that term is defined by the FDCPA. Rather, the term 'debt collector' specifically refers to those who are collecting a debt on behalf of another. It does not apply to creditors – like Exeter – who are collecting their own debts." (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." (citations omitted)))), *rec. accepted*, 2022 WL 17084143 (N.D. Tex.

Nov. 17, 2022).

### III. The Court need not appoint an attorney for James nor grant James further leave to amend.

James has now amended the complaint three times, once in state court and twice in federal court. Prior to James's amending for the third time, the Court specifically set out the applicable pleading standards and stressed the need to provide factual content, not mere conclusions (legal or otherwise). *See James*, 2025 WL 3650751, at *2-*3. But James still filed an amended complaint lacking the facts needed to allege plausible violations of law against any named defendant.

The Court should therefore also deny James's request for appointed counsel [Dkt. No. 13], as a court is only "required to appoint counsel for an indigent [litigant] in a civil lawsuit [if] there exist exceptional circumstances warranting such an appointment." *Tampico v. Martinez*, 987 F.3d 387, 392 (5th Cir. 2021) (per curiam) (citing *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015)).

And, under these circumstances, it's very likely that James has now alleged a "best case," so further leave to amend need not be granted. *See, e.g.*, *Allen v. Navy Fed. Credit Union*, No. 3:24-cv-949-L-BN, 2025 WL 484818, at *13 (N.D. Tex. Feb. 13, 2025) ("Granting leave to amend … is not necessary when the plaintiff has pleaded his or her 'best case' after being apprised of pleading deficiencies. Likewise, a district court need not grant a motion to amend if doing so would be an exercise in futility." (citations omitted)).

That said, the opportunity to file objections to these findings, conclusions, and recommendation (as further explained below) allows James another opportunity to

show that this case should not be dismissed and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

**Recommendation**

The Court should deny as moot Dkt. Nos. 9, 16, 18, 19, 20, 22, 23, 27, 29, 32, & 59; deny Plaintiff Shakka Shaneak James's motion to appoint counsel [Dkt. No. 13]; and, unless James shows through timely objections a basis to further amend the complaint to allege a plausible claim, the Court should dismiss this lawsuit with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 14, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE